Lauren Slee **DELLINGER**,
Plaintiff/Appellee,

v.

Hubert L. **DELLINGER**, Jr.,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

May 27, 1997.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 1, 1997.

David E. Caywood, Marc E. Reisman, Memphis, for Plaintiff/Appellee.

Stevan L. Black, Kimberly Harris Jordan, Memphis, for Defendant/Appellant.

## OPINION

LILLARD, Judge.

This is a divorce case. In dividing the marital property and granting the wife alimony *in solido,* the trial court awarded Lauran Slee Waldron Dellinger ("Wife") 65% of the marital property and awarded Hubert L. Dellinger, Jr., ("Husband") 35%. Husband now appeals the division of marital property. We reverse in part, affirm in part, and remand to the trial court for further proceedings.

Wife and Husband were married in 1966, and Wife filed for divorce in 1994. At trial in July 1995, the parties stipulated that Husband was more at fault than Wife but that he was not guilty of adultery or physical abuse. At the time of trial, Husband was 62 years old and Wife was 53 years old. The parties' children are now adults.

Husband is a pediatrician. In 1994 he earned $186,194.00 from his practice. In addition, he owned and rented an office building; in 1994 his rental income was $42,854.00. Husband had consistently made contributions to a profit sharing plan. Husband testified he planned to retire at age 65, attend seminary for a year, and then work in a pastoral capacity in a church. He testified further that if he continues as a practicing pediatrician he expects his earnings to diminish because referring physicians who are his contemporaries will retire and because patients select pediatricians who can see the child for a number of years.

During the marriage, Wife was a homemaker; her only work experience outside the home included a short stint as a lab technician and also a short period as an assistant to Husband's brother in his advertising business. In 1990, she returned to school, and earned her Master's degree in psychology in 1993. She is currently enrolled in a Ph.D. program, which she plans to complete in late 1997. After that she will seek employment in the field of psychology. She testified that she anticipates a starting income of $30,000.00 per year.

At trial, Wife presented expert testimony from Robert Winfield ("Winfield"), a certified financial planner. Over Husband's objection,

Winfield testified regarding several proposed rulings on the division of property, including Husband's proposal and Wife's proposal, and projected the effect each would have on both parties well into the future.

The trial court found that the parties' marital estate totaled $1,986,140.00. The final decree awarded Wife 65% of the marital property as property division and alimony *in solido*, without specifying how much of the award was either.

The trial court also ordered Husband to bear the tax consequences of the sale of the marital residence and to pay the credit card debt which Wife had accumulated since the parties separated, in the amount of $8,420.00. Wife received no rehabilitative or periodic alimony.

On appeal, Husband argues that the evidence preponderates against the trial court's award of 65% of the marital property to Wife. He also contends that the trial court erred in allowing Winfield's testimony, in ordering him to pay for Wife's credit card debts incurred after the separation, and in imposing on him the obligation for all taxes resulting from the sale of the marital residence. Husband seeks attorney's fees for this appeal.

Wife argues that the trial court's decision should be affirmed in total. If the trial court's award is adjusted on appeal, however, she appeals the trial court's decision not to award her rehabilitative alimony and the finding that 1,000 shares of Leader Federal stock were not marital property. In any event, she also seeks attorney's fees for this appeal.

■ Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. Tenn.R.App.P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn.App.1993). Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal. *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn.App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn.App.1987). The trial court's deci-

sion on the distribution of marital property is presumed correct unless the evidence preponderates otherwise. Tenn.R.App.P. 13(d); *Wallace*, 733 S.W.2d at 107.

Husband first argues that the trial court erred in its mathematical calculation of the dollar amount awarded to Wife. In its oral ruling on the distribution of property, the trial court stated that it used the values set forth in Husband's proposed ruling. In its oral ruling as well as the final decree, the trial court stated that it awarded Wife 65% of the property and Husband 35%. The court then delineated item by item the specific division of property. After the item by item delineation, the trial court ruled that some stocks which Husband co-owned with his mother and two checking accounts Wife shared with her daughters would be excluded from the division of marital property, each remaining with the original owner.

In its written ruling, the trial court ordered that its previous oral ruling be filed by the parties and made a part of the record. The written order finds, without elaboration, that the marital estate totaled $1,986,140.00. However, this Court has been unable to determine how this total was reached utilizing the value of the assets listed in Husband's proposed ruling, as was stated in the trial court's oral ruling. The combined total value of the assets, using Husband's proposed values and without the stocks and checking accounts excluded by the trial court, is $1,966,406.00. Husband argues on appeal that the trial court made a mathematical error in the total value of the assets. Wife does not address this issue on appeal and offers no explanation for the trial court's total; she simply argues generally that the trial court's ruling should be affirmed. Consequently, we conclude that the total value of the marital estate should be $1,966,406.00. Using the percentages of the total estate awarded by the trial court to each party, the award to Wife of 65% of the marital estate would be modified to $1,278,164.00, and the award to Husband of 35% of the marital estate would be modified to $688,242.00.

■ Husband next argues that the evidence preponderates against the trial court's award of 65% of the marital property to Wife

and 35% to Husband. He notes that the long duration of the marriage militates in favor of a 50/50 division of the marital property. *See Harrington v. Harrington,* 798 S.W.2d 244 (Tenn.App.1990). He argues that he is nearly at the age at which he had long contemplated retiring, age 65, and that the trial court's distribution of marital property impedes his ability to realize his goal of entering the seminary by making it necessary for him to work long beyond age 65. Moreover, he notes his undisputed testimony that his income as a pediatrician would decrease significantly after age 65. He argues that Wife, age 53 at trial, has many more years in which to earn an income.

Wife contends that the trial court's award is justified. She notes first that the trial court awarded her no alimony except the alimony *in solido,* which is the subject of this appeal. Second, Wife points out the substantial difference in earning capacity between the parties, even considering the difference in age.

By statute, several factors are to be considered in dividing marital property:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–4–121(c) (1996). A similar list of factors is considered in making an award of alimony, including alimony *in solido.* Tenn.Code Ann. § 36–5–101(d)(1) (1996).

■ The long duration of this marriage is a factor favoring an equal division of the marital property. *See Harrington v. Harrington,* 798 S.W.2d 244 (Tenn.App.1990). However, other factors justify the trial court's decision to award 65% of the marital property to Wife. There is no question that Husband's earning potential far exceeds that of Wife. Husband's average annual earnings over the last five years has been $244,935.00, including income from the rental of his office building. Wife, on the other hand, is currently working on her Ph.D. and is not earning a regular salary. Upon completing her degree she could begin earning approximately $30,000.00 a year. Even if Husband's practice declines over the upcoming years, as he predicts, his earnings will still far exceed Wife's earnings.

Moreover, the trial court declined to award Wife rehabilitative alimony. At trial, Wife sought rehabilitative alimony for a period of eight years, totaling $360,000.00. If the trial court had divided the marital property evenly, each party would have received $983,203.00 in assets. After adjusting for the apparent mathematical error in the final decree, the difference between Wife's actual award of 65% for a value of $1,278,164.00, and her award had she received 50% of the marital estate for a value of $983,203.00, totals $294,960.50, significantly less than what she would have received had she been awarded the rehabilitative alimony she requested.

■ In his argument against the trial court's award of 65% of the marital property to Wife, Husband maintains that the trial court erred in permitting Wife's expert Robert Winfield to testify regarding the parties' future economic status. Husband argues that the trial court's division of marital property should be based on the parties' current status and that Winfield's projections regarding their future financial positions were not relevant. In addition, Husband contends that Winfield's testimony was based on false or erroneous assumptions.

■ The trial court overruled Husband's objection to Winfield's testimony on the parties' future financial positions, indicating that it had "to consider the issue of future not merely the present." Indeed, under Tennessee Code Annotated § 36–4–121(c)(4), the trial court is directed to consider the parties' relative ability "for future acquisitions of capital assets and income." The trial court appropriately considered the parties' future economic status as well as their financial positions at the time of trial. Consequently, Winfield's testimony on this issue was relevant. Moreover, the trial judge has broad discretion over the admissibility of evidence, including testimony from expert witnesses. *See Castelli v. Lien,* 910 S.W.2d 420, 425–26 (Tenn.App.1995). The record does not indicate that the trial court abused its discretion in permitting Winfield's testimony.

Considering the evidence presented to the trial court and all of the relevant statutory factors, the evidence does not preponderate against the trial court's award of 65% of the marital property to Wife and 35% to Husband, as division of marital property and alimony *in solido.*

■ Husband argues next that the trial court erred in ordering Husband to pay the credit card debts incurred by Wife after the parties' separation, during which Husband was making support payments to Wife. In apportioning marital debts, the following factors are considered:

(1) which party incurred the debt and the reason for the debt;

(2) which party benefitted from the loan; and

(3) which party is better able to assume the debt.

*Houghland v. Houghland,* 844 S.W.2d 619, 624 (Tenn.App.1992). In this case, it is uncontroverted that the credit card debts were incurred by Wife. The debts were incurred while the parties were living apart, and Wife offered no proof that Husband benefitted from them. Although Husband unquestionably earns more than Wife, the trial court's division of property and award of alimony *in solido* provided Wife with more than ample resources to pay her own debts. Therefore, the trial court's order requiring Husband to pay Wife's credit card debts totaling $8,420.00 is reversed and these debts are allocated to Wife.

■ Husband argues further that the trial court erred in ordering that Wife would receive all of the proceeds from the sale of the marital residence and in ordering Husband to be responsible for all of the tax consequences arising from that sale. Relying primarily on the cross-examination of Wife's expert, Robert Winfield, Husband contends that, had the trial court ordered that the parties divide equally the gain from the sale of the marital residence, each party would be able to defer payment of taxes on his or her share of the gain. With all of the proceeds from the sale allocated to Wife, Husband argues that this results in approximately $75,000.00 in tax liability to Wife, to be paid by Husband, that would otherwise not be incurred. Consequently, Husband asks this Court to order the parties to divide evenly the gain from the sale of the marital residence, as well as the liability for any tax consequences, resulting in minimal tax liability to both.

Wife contends that the record is insufficient for this Court to address this portion of the trial court's ruling because the only testimony at trial about the adjusted tax basis of the parties' marital residence was Husband's testimony that it would be "somewhere around $200,000, $225,000, I suspect." Citing Internal Revenue Code § 1034 and Revenue Ruling 74–250, Wife maintains that, even with all of the proceeds of the sale allocated to Wife, if each party purchases a new residence within two years of the sale of the

marital residence and the combined value of the new residences equals the net sales price, approximately $517,000.00, recognition of capital gains would be completely avoided and there would be no tax liability for Husband to pay. Husband disputes this conclusion but states that, if Wife's contention is true, there would be no tax liability for Husband to pay, and consequently Wife is not harmed by being required to pay one-half of any tax liability resulting from the sale of the marital residence.

At trial, Winfield, Wife's expert, testified on cross-examination that, if the house were sold jointly and the gain divided evenly between the parties, each could defer recognition of the gain by purchasing a home valued at an amount equal to half of the total gain. There was no testimony regarding the tax consequences under the trial court's ruling, whereby all of the proceeds from the sale of the proceeds from the sale of the marital residence are awarded to Wife and Husband is obligated to pay Wife's resulting tax liability. In the written report submitted by Wife's expert, Winfield, the analysis of Husband's proposed ruling suggests that if a disproportionate amount of gain is allocated to one party, this can result in substantial tax liability that would not occur if the gain were divided evenly. Despite this, Wife maintains in her brief on appeal that the trial court's ruling results in "no tax consequence" if Husband and Wife purchase new homes in the amounts of $300,000.00 and $250,000.00, respectively, as they testified was their plan.

> In its Final Decree, the trial court stated: The Court imposes upon Defendant the obligation for any taxable consequences that may result from the sale of the parties' residence. The parties are ordered to handle the sale of the residence in such a way that will lower the Defendant's obligation as much as can be allowed by the existing taxation laws.

The record below does not include any evidence on the taxable consequences of the trial court's ruling, allocating to Wife all of the proceeds from the sale of the marital residence and requiring Husband to pay all of the resulting taxes. However, Winfield's written report suggests that allocating more of the gain from the sale to one party results in unnecessary tax liability. Therefore, although the trial court ordered the parties to "handle the sale of the residence" in a way that would minimize the resulting tax liability, the allocation of all of the gain to Wife may have effectively prevented the parties from minimizing the tax consequences to be paid by Husband. Although the record supports an award to Wife of 65% of the marital property, the property should not be distributed in such a way that it unnecessarily creates tax consequences to be paid by Husband. Therefore, the cause is remanded to the trial court for a hearing on the tax consequences of the trial court's ruling regarding the sale of the marital residence. If the trial court determines that the ruling unnecessarily creates tax liability, the ruling may be modified in such a way that the tax consequences are minimal without depriving Wife of the total award in the trial court's original ruling, after the mathematical correction mentioned earlier in this Opinion. For example, if the trial court determines that the tax consequences may only be minimized if the gain from the sale of the residence is divided evenly, it may do so and modify the division of property so that Wife retains an award valued in the approximate amount of $1,278,164.00.

On appeal, Wife states that if the trial court's award is adjusted, she appeals the trial court's decision not to award her rehabilitative alimony. However, the trial court's award has been adjusted only minimally, to correct a mathematical miscalculation, to hold Wife responsible for her credit card debts after the separation, and to remand for further proceedings the ruling imposing on Husband the obligation to pay the tax consequences on the sale of the marital residence. Under these circumstances, the trial court's decision not to award rehabilitative alimony is affirmed.

Wife also appeals the trial court's decision to deny her request for attorney's fees for the trial. The trial court provided Wife an award adequate for payment of her attorney's fees. *See Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn.App.1992). Finally, we find no error in the trial court's ruling

that Husband's shares of Leader Federal stock were not marital property, especially in light of a similar ruling regarding some bank accounts Wife shared with her children.

Both parties have requested attorney's fees for this appeal. This Court, however, has previously ruled that an award of attorney's fees to either party is not appropriate when both parties have been partially successful in their appeal. *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn.App.1973). Both parties' requests for attorney's fees on appeal are denied.

In sum, the trial court's decision to award Wife 65% of the marital estate is affirmed. To correct an apparent mathematical miscalculation, the dollar amounts of the award are modified to award Husband $688,242.00 and to award Wife $1,278,164.00. The final decree is further modified to require Wife to pay her credit card debts incurred after the parties' separation, totaling $8,420.00. The final decree is also modified to remand for further proceedings the trial court's decision to allocate to Wife all proceeds from the sale of the residence and to impose on Husband the obligation for any taxable consequences resulting from the sale. If necessary, the trial court is directed to modify the division of property to permit the parties to minimize the taxable consequences of the sale of the residence. In all other respects, the decision of the trial court is affirmed. Both parties' requests for attorney's fees on appeal are denied.

The decision of the trial court is affirmed in part and reversed in part, as set forth above, and the cause is remanded for further proceedings, consistent with this Opinion. Costs are assessed equally against Appellant and Appellee, for which execution may issue if necessary.

CRAWFORD, P.J., W.S., and FARMER, J., concur.